# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KETZY TREVIZO, | : | CIVIL NO: 1:23-CV-00508 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| CARLOS DEL TORO, Secretary of the Navy, | : | |
| | : | |
| Defendant. | : | |

## <u>MEMORANDUM OPINION</u>

## I.  Introduction.

Plaintiff Ketzy Trevizo claims that her employer, the United States Department of the Navy, discriminated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*  Currently pending is the defendant's motion to dismiss and/or for summary judgment.  For the reasons discussed below, we will grant that motion to the extent we will dismiss Trevizo's complaint for failure to state a claim upon which relief can be granted.  We will, however, grant Trevizo leave to file an amended complaint.

**II.  Background and Procedural History.**

Trevizo began this action by filing a complaint on March 22, 2023, naming

Carlos Del Toro, the Secretary of the Navy, as the defendant.  Claiming that the

Department of the Navy discriminated against her based on her gender, ethnicity,

and color, Trevizo is proceeding under Title VII.  She alleges the following facts in

her complaint.

Beginning in May 2016, Trevizo, who "is a Hispanic female with brown

skin, of Puerto Rican decent," was employed at the Naval Supply Systems

Command, Ammunitions Logistics Center in Mechanicsburg, Pennsylvania, as a

Supervisory Logistics Management Specialist. *Doc. 1* ¶¶ 3, 9, 10.  Catherine Butler

was Trevizo first-level supervisor. *Id*. ¶ 11.  In 2019, Captain Arcangelo Dell'Anno

became Butler's first-level supervisor and Trevizo's second-level supervisor. *Id*.

¶ 12.

Trevizo contends that she was subject to "[a] hostile and abusive work

environment" that "was created by pervasive and continuous discriminatory

actions" by Butler, who "continuously treated" her "less favorably than her white,

male counterparts[.]" *Id*. ¶ 13.  "By way of illustration, and without limitation,"

Trevizo lists the following as "some examples of this behavior" by Butler:

> • Ms. Butler refused to permit Ms. Trevizo to move her
> ergonomically fitted office furniture with her when she was
> moved to another office, forcing Ms. Trevizo to work at a desk

that was not accommodating to her physical needs, as was established as necessary through an ergonomic study;

• Ms. Butler denied Ms. Trevizo's request to telework due to a school closure for a snowstorm, advising that telework was not authorized to watch children, despite Ms. Butler doing just that, only a few months prior to this denial;

• Ms. Butler stated to Jeremy Hilliker, a white male, that, "it is so much nicer having you attend the meetings, you are so much more agreeable," during Ms. Trevizo's maternity [leave] and while Mr. Hilliker was the acting division head in place of Ms. Trevizo;

• Despite notice to Ms. Butler, Ms. Butler refused and/or failed to have a motor repaired for Ms. Trevizo's standup desk, thus eliminating any benefit that could have been appreciated by Ms. Trevizo;

• Ms. Butler attempted to interfere with Ms. Trevizo's husband's consideration for employment as a Logistics Management Specialist, in the department managed by Keith Rhodes, by advising Mr. Rhodes to refrain from interviewing Ms. Trevizo's husband for the position;

• Ms. Trevizo's request to hire a developmental hire was met with significant pushback from Ms. Butler and additional hurdles to overcome, as compared to these types of hire requests being readily approved for Ms. Trevizo's white, male predecessor, and a subsequent request by Mr. Rhodes, without pushback and additional steps inserted into the process;

• The work product produced by Ms. Trevizo's division was scrutinized differently while under the management of Ms. Trevizo, compared to when it was managed by her white, male predecessor, Craig Murphy, or while under the temporary management of Mr. Hilliker;

- Ms. Butler consistently denied approval of developmental training for Ms. Trevizo that would assist her in her promotional prospects within her career, even inserting herself to deny some training opportunities that did not require supervisor approval;

- Ms. Butler seemed to consistently misinterpret e-mails from Ms. Trevizo as though they were aggressive or overstepping her authority; and

- Ms. Butler used one instance of her misinterpretation of an e-mail to justify adverse actions toward Ms. Trevizo on three separate occasions.

*Id*. According to Trevizo, Captain Dell'Anno failed and/or refused to correct Butler's actions including by failing or refusing to correct Butler's "use of one misinterpreted e-mail as the basis for three separate adverse actions toward" Trevizo and by failing or refusing to correct Butler's "improper denials of developmental training opportunities for" Trevizo. *Id*. ¶ 14. Trevizo also alleges that Captain Dell'Anno "improperly altered the course of hiring for a position that [she] was quailed for and had applied for, in order to make it more difficult for [her] to be selected for the position." *Id*. Trevizo asserts that her "gender, ethnicity and/or color, were motivating factors in the circumstances, actions and omissions that created the hostile and abusive work environment for" her. *Id*. ¶ 15.

Trevizo requested Equal Employment Opportunity ("EEO") counseling regarding the discrimination and harassment by Butler, and after an EEO counselor issued a Notice of Right to File a Formal Complaint of Discrimination, in January

4

2021, Trevizo filed a formal complaint. *Id*. ¶¶ 16–17.  A private contractor investigated Trevizo's claims, and an EEOC administrative judge subsequently issued a decision and order granting summary judgment. *Id*. ¶¶ 18–19.[1]  The Department of the Navy issued a final order on December 22, 2022. *Id.* 20.[2] Trevizo filed the complaint in this case within 90 days of the issuance of the final order. *Id*.

The complaint contains two counts.  Count I is labeled as "Discrimination in Violation of Title VII of the Civil Rights Act of 1964." *Id*. at 8.  In this count, Trevizo claims that "[t]he Defendant has continuously discriminated against [her] because of her gender, ethnicity and/or color, by engaging in a course of conduct, including but not limited to, at least some of the acts and omissions set forth above." *Id*. ¶ 25.  And she contends that her "gender, ethnicity and/or color, were motivating factors in the Defendant's decision to treat [her] in a disparate manner." *Id*. ¶ 26.  Trevizo alleges that she suffered damages as a result of the defendant's "discriminatory actions and inactions[.]" *Id*. ¶ 27.

---

[1] Although Trevizo does not explicitly so allege, it is implied by the fact that Trevizo filed this action that the summary judgment was against her and in favor of the defendant.

[2] Again, although not explicitly alleged, it is implied that the final decision was not in Trevizo's favor.

Count II is labeled as "Harassment in Violation of Title VII of the Civil Rights Act of 1964." *Id*. at 9.  In this count, Trevizo claims that "[t]he Defendant has continuously harassed [her] because of her gender, ethnicity and/or color, by engaging in a course of conduct, including but not limited to, at least some of the acts and omissions set forth above, thus creating a hostile and abusive work environment." *Id*. ¶ 32.  She alleges that the "harassing, course of conduct by the Defendant was unwelcomed," that she "perceived the working environment to actually be abusive and hostile, and a reasonable person in [her] circumstances would have considered the working environment suffered by [her] to be abusive and/or hostile." *Id*. ¶¶ 33–34.  She also alleges that the defendant "knew or should have know of the harassment but failed to take prompt remedial action to address the circumstances." *Id*. ¶ 35.  And she contends that her "gender, ethnicity and/or color, were motivating factors in the Defendant's decision to treat [her] in a harassing manner." *Id*. ¶ 36.  Trevizo alleges that she suffered damages as a result of the defendant's "harassing actions and inactions, as well as the Defendant's failure to take prompt remedial action to prevent the harassment[.]" *Id*. ¶ 37.

Trevizo is seeking compensatory damages, "[i]njunctive relief, equitable relief, affirmative relief, accrual of back pay," attorney's fees, costs, and interest. *Id*. at 11–12 (Wherefore Clause).

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned.  Currently pending is the defendant's motion to dismiss and/or for summary judgment. *See doc. 11*. That motion has been fully briefed. *See docs. 19, 33, 38*.

## III. Discussion.

"In 1972, Congress extended Title VII's protection to federal employees." *Francis v. Mineta*, 505 F.3d 266, 271 (3d Cir. 2007).  The federal-sector provision of Title VII provides that "[a]ll personnel actions affecting employees or applicants for employment" in specified federal departments and agencies "shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a).

"Workplace behavior may violate Title VII in a variety of ways." *Kengerski v. Harper*, 6 F.4th 531, 537 (3d Cir. 2021).  Two types of Title VII claims are potentially relevant here.  The first category is status-based discrimination claims. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 342 (2013) (referring to claims based on "basic workplace protection such as prohibitions against employer discrimination on the basis of race, color, religion, sex, or national origin, in hiring, firing, salary structure, promotion and the like" as status-based discrimination claims).  The second category is hostile-work-environment claims. *Faragher v.*

*City of Boca Raton,* 524 U.S. 775, 786 (1998) (observing that it has held that "harassment so severe or pervasive as to alter the conditions of [the victim's] employment and created an abuse working environment violates Title VII") (internal quotation marks and citation omitted)).

### A.  Because Trevizo has denied asserting any discrete status-based discrimination claims, Count I of the Complaint will be dismissed.

The defendant construed Trevizo's complaint as raising both discrete status-based discrimination claims and a hostile-work-environment claim.  Construing Trevizo's allegations regarding the actions by Butler, *see doc. 1* ¶ 13, as raising discrete discrimination claims, the defendant contends that Trevizo fails to state any discrimination claims upon which relief can be granted because she has failed to allege any adverse actions that significantly altered her employment status.  The defendant also contends that he is entitled to summary judgment as the discrimination claims based on Butler's actions because Trevizo cannot show that she was subject to an adverse action, the Department of Navy had legitimate non-discriminatory reasons for the actions of Butler, and Trevizo cannot show that those reasons were pretext for discrimination.  The defendant also construed Trevizo's allegation that "Captain Dell'Anno improperly altered the course of hiring for a position that [she] was qualitied for and had applied for, in order to make it more difficult for [her] to be selected for the position," *doc. 1* ¶ 14(c), as a

discrete failure-to-promote discrimination claim.  As to that claim, the defendant

contends that he is entitled to summary judgment and that claim should be

dismissed because Trevizo did not file the instant action within 90 days of the

Department of Navy's final agency decision as to that claim.[3]

Trevizo's response to the defendant's argument regarding the purported

discrimination claims is that she is not bringing discrimination claims.  Rather, she

asserts that both counts in her complaint are "based upon the creation of a hostile

---

[3] The defendant cites to 42 U.S.C. § 2000e-5(f)(1), which provides, in part,
that if the EEOC dismisses a charge, it "shall so notify the person aggrieved and
within ninety days after the giving of such notice a civil action may be brought
against the respondent named in the charge . . . by the person claiming to be
aggrieved[.]"  The federal sector provision of Title VII incorporates the provisions
of § 2000e-5(f)–(k). *See* 42 U.S.C. § 2000e-16(d).  It also provides, in pertinent
part:

> Within 90 days of receipt of notice of final action taken by a
> department, agency, or unit referred to in subsection (a), or by
> the Equal Employment Opportunity Commission upon an
> appeal from a decision or order of such department, agency, or
> unit on a complaint of discrimination based on race, color,
> religion, sex or national origin, brought pursuant to subsection
> (a), . . . an employee or applicant for employment, if aggrieved
> by the final disposition of his complaint . . . may file a civil
> action as provided in section 2000e-5 of this title, in which civil
> action the head of the department, agency, or unit, as
> appropriate, shall be the defendant.

42 U.S.C. § 2000e–16(c).  Here, the defendant contends the Department of the
Navy issued its final agency decision as to the failure-to-promote discrimination
claim on July 12, 2022, but Trevizo did not file the instant action until March 22,
2023—well after 90 days from of the date of the final agency decision.

work environment." *Doc. 33* at 2.  And specifically, as to the allegation that "Captain Dell'Anno improperly altered the course of hiring for a position that [she] was qualified for and had applied for, in order to make it more difficult for [her] to be selected for the position," *doc. 1* ¶ 14(c), Trevizo asserts that she is not asserting a failure-to-promote claim, but that "Captain Dell'Anno's altering of the hiring process is just another fact to further support the hostile work environment," *doc. 33* at 2.  Trevizo also did not present any arguments in opposition to the defendant's arguments that the discrimination claims should be dismissed or he should be granted summary judgment as to those claims.  Rather, Trevizo's brief address only the hostile-work-environment claim.

Trevizo's response that she is not asserting discrete discrimination claims is surprising given that her complaint contains two counts—Count I labeled discrimination and Count II labeled harassment.  Nevertheless, given Trevizo's assertion that she is not bringing discrete discrimination claims and her failure to oppose dismissal of such claims, we will dismiss Count I of the complaint.[4]

---

[4] It is unclear why Trevizo would include two counts in her complaint if she is bringing only a hostile-work-environment claim.  And to the extent she is suggesting that she is presenting two different hostile-work-environment claims, she has not explained on what basis she could do so, what the difference in the claims is, or why she would label one such claim as a discrimination claim and the other as a harassment claim.

## B. Trevizo fails to state a hostile-work-environment claim upon which relief can be granted.

The defendant contends that the Trevizo's hostile-work-environment claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because it fails to state a claim upon which relief can be granted.  For the reasons discussed below, we will grant the motion to dismiss the hostile-work-environment claim.  We will also grant Trevizo leave to amend.[5]

### 1.  Pleading and Fed. R. Civ. P. 12(b)(6) Standards.

In accordance with Fed. R. Civ. P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  When reviewing a motion to dismiss under Rule 12(b)(6), "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).  In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as

---

[5] In the alternative to dismissal, the defendant contends that he is entitled to summary judgment as to the hostile-work-environment claim.  Because we will grant the motion to dismiss the hostile-work-environment claim pursuant to Fed. R. Civ. P. 12(b)(6)—with leave to amend—we do not reach the defendant's alternative contention that he should be granted summary judgment.

undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769–70 (M.D. Pa. 2012). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). The statement required by Rule 8(a)(2) must give the defendant fair notice of the nature of the plaintiff's claim and of the grounds upon which the claim rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than "labels," "conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court "'must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party.'" *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v.*

*Cty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)).  But a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).  A court also need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (footnote and citations omitted) (quoting *Iqbal,* 556 U.S. at 675, 679).

**2. Trevizo fails to plausibly allege that she was subject to severe or pervasive discrimination.**

In order to prevail on a hostile-work-environment claim, a plaintiff must establish (1) that she suffered intentional discrimination because of a protected characteristic, (2) that the discrimination was severe or pervasive; (3) that the discrimination detrimentally affected her; (4) that the discrimination would have detrimentally affected a reasonable person of like characteristics in like circumstances; and (5) the existence of *respondeat superior* liability. *Huston v. Proctor & Gamble Paper Products Corp.,* 568 F.3d 100, 104 (3d Cir. 2009). "The first four elements establish a hostile work environment, and the fifth element determines employer liability." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). Of course, at the motion-to-dismiss stage, a plaintiff need not prove her case. Rather, the pleading "standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)). "Therefore, at this early stage of the proceedings, it is enough for [Trevizo] to allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Id*.

The defendant contends that Trevizo fails to allege facts supporting a reasonable inference that she was subject to discrimination that was severe or pervasive.[6, 7]  We agree.

---

[6] In making this argument, the defendant addresses only the allegations regarding Butler's conduct.  This is apparently because, as set forth above, the defendant contends that Trevizo's discrimination claim regarding Captain Dell'Anno altering the course of hiring for a position that she applied for was not timely filed.  But, although the defendant appears to recognize that Trevizo is alleging that Captain Dell'Anno's conduct was part of her hostile-work-environment claim, *see doc. 19* at 16, the defendant does not specifically argue that any part of the hostile-work-environment claim is untimely.  Rather, given that the defendant cites only to the final agency decision issued on July 12, 2022—which dealt with Trevizo's administrative status-based discrimination claim as well as an administrative retaliation claim based on Captain Dell'Anno's changing the job posting, and not Trevizo's administrative hostile-work-environment claim—we construe the defendant's timeliness argument as addressed only to Trevizo's purported status-based discrimination claim based on Captain Dell'Anno's changing the job posting.  Because Trevizo has disclaimed that she is pursing such a status-based discrimination claim, as set forth above, will dismiss any such claim.  But the fact that the status-based discrimination claim is not viable, does not explain why the defendant failed to include Trevizo's allegation regarding Captain Dell'Anno's changing the job posting as part of Trevizo's hostile-work-environment claim.  In its reply brief, the defendant asserts that "Trevizo has not cited any authority for the proposition that she can use separate, subsequent, and untimely EEOC claim as background information in support of her present Complaint.  That is because she cannot." *Doc. 38* at 19.  But while the defendant has argued, and shown, that any status-based discrimination claim based on Captain Dell'Anno changing the job posting is untimely, the defendant has not developed an argument that Trevizo's hostile-work-environment claim is untimely.  Nor has he developed an argument that Trevizo cannot include the allegation regarding Captain Dell'Anno changing the job posting as part of her hostile-work-environment claim.

[7] Curiously, although earlier in her brief, Trevizo asserted that Captain Dell'Anno's action of changing the job posting was part of her hostile-work-environment claim, Trevizo does not mention this when arguing in opposition to

For workplace harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment. *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986).  "The 'severe or pervasive' standard is disjunctive and so 'a plaintiff need not show that her hostile working environment was both severe and pervasive; only that it was sufficiently severe or sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions.'" *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 215 n.12 (3d Cir. 2017) (quoting *Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 119 (2d Cir. 2010)). Thus, "'some harassment may be severe enough to contaminate an environment event if not pervasive; other less objectionable, conduct will contaminate the workplace only if is pervasive.'" *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017) (quoting *Jensen v. Potter*, 435 F.3d 444, 449 n.3 (3d Cir. 2006)).  But "'isolated incidents (*unless extremely serious*) will not amount to [harassment]." *Id.* (quoting *Jensen*, 435 F.3d at 449 n.3).

---

the defendant's assertion that she fails to allege severe or pervasive discrimination. In determining whether Trevizo has alleged severe or pervasive discrimination, we focus, as to do the parties, on the alleged actions of Butler.  We note, however, that including Captain Dell'Anno's alleged changing of the job posting into the mix, would not change our determination here that Trevizo failed to plausibly alleged that she was subject to severe or pervasive discrimination.

"When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank,* 477 U.S. at 65 & 67). The "conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788. "Although the bar for establishing severe or pervasive discrimination is relatively high, the determination of what constitutes severe or pervasive does not lend itself to a mathematically precise test." *Fedder v. Bloomsburg Univ. of Pennsylvania*, No. 4:23-CV-01678, 2024 WL 580552, at *3 (M.D. Pa. Feb. 13, 2024) (internal quotation marks and citation omitted). Whether an environment is hostile or abusive can be determined only by looking at all the circumstances. *Harris,* 510 U.S. at 23. The circumstances "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* "'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher*, 524 U.S. at 788 (quoting *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 82 (1998)).

17

At the outset, we note that the complaint uses confusing language to assert what alleged incidents are part of Count II—the hostile-work-environment claim. In Count II, Trevizo claims that "[t]he Defendant has continuously harassed [her] because of her gender, ethnicity and/or color, by engaging in a course of conduct, including but not limited to, at least some of the acts and omissions set forth above, thus creating a hostile and abusive work environment." *Id*. ¶ 32.  Although the inclusion of the clause "at least some of the acts and omissions set forth above" makes this assertion unclear, in her brief, Trevizo asserts that her complaint sets forth "just ten examples, by way of illustration only, of how she was continuously treated significantly less favorably than her white, male counterparts and predecessor, by Ms. Butler." *Doc. 33* at 6-7 (citing *doc. 1* at ¶ 13).  Trevizo has not alleged, nor does she argue that she alleged, severe discrimination.  Rather, given her reference to the multiple alleged actions or inactions by Butler, we construe Trevizo to be arguing that she was subject to pervasive discrimination.

Here, Trevizo's allegations are not sufficient to plausibly allege pervasive discrimination.  Trevizo does not allege when any of that alleged actions or inactions by Butler took place or how they were connected.   Moreover, many of her allegations are vague and unsupported by facts suggesting how, or even if, they impacted her work environment.  For example, Trevizo alleges that Butler "attempted to interfere" with her husband's consideration for employment by

18

advising Mr. Rhodes to refrain from interviewing her husband. *Doc. 1* ¶ 13(e).  But Trevizo does not allege whether Rhodes actually refrained from interviewing her husband or whether her husband was actually hired.  Nor does she allege how the hiring—or not—of her husband, affected her work environment.   Similarly, although Trevizo alleges that she received "significant pushback" and "additional hurdles" regarding a "developmental hire," *doc. 1* ¶ 13(f), she does not allege what she means by "significant pushback" or "additional hurdles," or how such impacted her work environment.  Nor does she allege whether she was able to make the developmental hire.  Further, Trevizo alleges the work product of her division "was scrutinized differently" while under her management "compared to when it was managed by her white, male predecessor, Craig Murphy, or while under the temporary management of Mr. Hilliker." *Doc. 1* ¶ 13(g).  But she does not allege—even in general terms—how the work was scrutinized differently.  And even though she does not so allege, we assume that she means the work under her management was scrutinized more harshly.  But again, she does not allege—even in general terms—in what manner it was scrutinized more harshly.  Trevizo also alleges that Butler "seemed to consistently misinterpret e-mails from [her] as though they were aggressive or overstepping her authority," and Butler "used one instance of her misinterpretation of an email to justify adverse actions toward [her] on three separate occasions." *Doc. 1* ¶ 13(i), (j).  Yet Trevizo failed to allege any

19

facts whatsoever as to what adverse actions followed from Butler's alleged misinterpretation of the emails or how the alleged adverse actions or misinterpretation of the emails affected her working conditions.  Finally, we note that although Trevizo alleges that "Butler consistently denied approval of developmental training" for her, *see doc. 1* ¶ 13(h), she does not allege what she means by "consistently" in this context.  We do not expect Trevizo to plead dates or even exact numbers, but whether she was denied training twice, ten times, or twenty times is important to our determination of whether she has pleaded persuasive discrimination.

       In addition to being vague, Trevizo does not allege facts tying the different actions by Butler together.  "[P]ervasive means not just episodic, but sufficiently continuous and concerted." *Sousa v. Amazon.Com, Inc.*, No. 1:21-CV-717-SB, 2022 WL 4548910, at *2 (D. Del. Sept. 29, 2022) (internal quotation marks and citation omitted), *aff'd*, No. 22-3043, 2023 WL 7486751 (3d Cir. Nov. 13, 2023).  But here, Trevizo's allegations are largely episodic.  She alleges two incidents involving office furniture, one involving denial of telework, one comment made to her replacement while she was on maternity leave, one instance of attempted interference with the hiring of her husband, one instance involving a request to hire a developmental hire, an unspecified number of instances regarding scrutinizing work product, an unspecified number of instances of denial of training, and an

unspecified number of instances regarding misinterpreted emails.  There is little

tying these episodes together.  For example, there are no allegations regarding

statements or actions that would lead to an inference that these actions are

connected to one another.

Given the vague and episodic nature of the alleged conduct, we conclude

that Trevizo has failed to plausibly allege that she was subject to severe or

pervasive discrimination because of her gender, ethnicity, or color.  In so

concluding, we are mindful that we cannot look at statements or incidents in

isolation.  Rather, we must consider the totality of the circumstances and the entire

scenario regarding Trevizo's work environment. *Harris,* 510 U.S. at 23

("[W]hether an environment is 'hostile' or 'abusive' can be determined only by

looking at all the circumstances."); *Cardenas v. Massey*, 269 F.3d 251, 261-62 (3d

Cir. 2001) ("[T]he advent of more sophisticated and subtle forms of discrimination

requires that we analyze the aggregate effect of all evidence and reasonable

inferences therefrom, including those concerning incidents of facially neutral

mistreatment, in evaluating a hostile work environment claim."); *Andrews v. City*

*of Philadelphia*, 895 F.2d 1469, 1484 (3d Cir. 1990) ("A play cannot be

understood on the basis of some of its scenes but only on its entire performance,

and similarly, a discrimination analysis must concentrate not on individual

incidents, but on the overall scenario.").  We are also mindful that "[c]ourts in this

Circuit have . . . 'shown a reluctance to dismiss a complaint at the 12(b)(6) stage when the primary challenge to the hostile work environment claim is whether or not the conduct in question is severe [or] pervasive.'" *Fedder,* 2024 WL 580552, at *3 (M.D. Pa. Feb. 13, 2024) (citing cases).

Nevertheless, hostile-work environment claims are dismissed at the 12(b)(6) stage when the complaint fails to plausibly allege facts from which it can be inferred that the plaintiff was subject to severe or pervasive harassment. *See e.g., Sousa v. Amazon.com, Inc.*, No. 22-3043, 2023 WL 7486751, at *3 (3d Cir. Nov. 13, 2023) ("Sousa's hostile work environment claim fails because she has not sufficiently alleged that Dorsey's conduct was so severe or pervasive that it altered her conditions of employment."); *Rajendran v. Wormuth*, No. 3:22-CV-00581, 2023 WL 2666695, at *7–8 (M.D. Pa. Mar. 28, 2023) (dismissing hostile-work environment claim because the plaintiff "fails to describe harassment that is severe or pervasive," and observing that "[i]nstead, he alleges isolated incidents of denied training, a single incident of discipline that was not proportional to the infraction, and a demotion, that "[h]e does not aver that these actions changed the conditions of his day-to-day employment," that "[h]e does not describe an abusive working environment," and that "[t]he conduct he describes is not extreme"); *Evan v. DeJoy*, No. 3:20-CV-49, 2023 WL 2577235, at *6 (M.D. Pa. Mar. 20, 2023) (concluding that the complaint fails to state a hostile-work environment claim

22

because, among other reasons, the plaintiff "has not plausibly alleged that the harassment was severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive" (internal quotation marks and citations omitted)); *Henderson v. Pennsylvania State Univ.*, No. 4:21-CV-00872, 2022 WL 838119, at *10 (M.D. Pa. Mar. 21, 2022) (concluding that "even under the lenient standards applied to a motion to dismiss, the allegations, as currently constituted, are insufficient to demonstrate sufficiently pervasive or severe discrimination," describing the allegations as conclusory, and noting that the plaintiff "must put some meat on the bones of his allegations in order to support his claim that racism and racial biases permeate Penn State" (internal quotation marks and citation omitted)); *Andrews v. Williams WPC-I, LLC*, No. 4:19-CV-02200, 2020 WL 4015404, at *6 (M.D. Pa. July 16, 2020) (dismissing hostile-work environment claim because the plaintiff "has not alleged enough to satisfy the high standard of establishing a hostile work environment," explaining that the plaintiff "has not made out that the performance review, exclusion from emails and meetings, and bad faith responses were because of [the plaintiff's] age," that "the alleged conduct was 'physically threatening or humiliating' or that it 'unreasonably interfere[d] with [his] work performance,' and noting that the "Court cannot divine the precise frequency or severity of this

conduct from the current minimal state of the pleadings" (internal citations omitted)).

And "[t]o state a hostile work environment claim, the complaint need[s] to describe conduct that reveal[s] the plaintiff's work environment was so 'permeated with discriminatory intimidation, ridicule, and insult' that it 'alter[ed] the conditions of [her] employment.'" *Sousa*, 2023 WL 7486751, at *3 (quoting *Harris*, 510 U.S. at 21). Here, viewing the facts alleged as a whole and in the light most favorable to Trevizo, we nevertheless conclude that, for the reasons set forth above, Trevizo has failed allege facts that plausibly suggest that she was subject to severe or pervasive discrimination because of her gender, ethnicity, or color that altered the conditions of her employment. Accordingly, she fails to state a hostile-work-environment claim upon which relief can be granted.[8]

### C. Leave to Amend.

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008). Here, Trevizo requests that if the court concludes that her complaint fails to state a claim

---

[8] Because we conclude that the complaint fails to state a hostile-work environment claim upon which relief can be granted on this basis, we do not address the defendant's other arguments for dismissal of such claim.

upon which relief can be granted, she be given leave to amend. And we cannot say that leave to amend would be inequitable or futile. Accordingly, we will grant Trevizo leave to file an amended complaint.

## IV. Conclusion.

For the foregoing reasons, we will grant the defendant's motion to the extent that we will dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). We will also, however, grant Trevizo leave to file an amended complaint. An appropriate order follows.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge