## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KETZY TREVIZO, | : | CIVIL NO.: 1:23-CV-00508 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| CARLOS DEL TORRO, | : | |
| SECRETARY OF THE NAVY, | : | |
| | : | |
| Defendant. | : | |

## <u>MEMORANDUM OPINION</u>

### I.  Introduction.

Plaintiff Ketzy Trevizo claims that her employer, the United States Department of the Navy, discriminated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*  Currently pending is the defendant's second motion to dismiss and/or for summary judgment. For the reasons discussed below, we will grant the defendant's motion to dismiss for failure to state a claim upon which relief can be granted.

### II.  Background and Procedural History.

Trevizo began this action by filing a complaint on March 22, 2023, naming Carlos Del Toro, the Secretary of the Navy, as the defendant. *Doc. 1.*  In the

complaint, Trevizo brought two counts, claiming that the Department of the Navy discriminated against her and created a hostile work environment through severe and pervasive harassment on account of her gender, ethnicity, and color in violation of Title VII.  After the defendant entered his appearance (*docs. 4, 5*), and was granted an extension of time to file a responsive pleading (*doc. 8*), the parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) (*doc. 10*). The defendant then filed a motion to dismiss and/or for summary judgment (*doc. 11*), and a brief in support of that motion. *Doc. 19.*  Trevizo filed a brief in opposition to this motion. *Doc. 33.*  And the defendant filed a reply brief. *Doc. 38.*

We granted this motion to dismiss. *Docs. 39, 40.*  We dismissed Trevizo's discrimination claim because her opposition papers denied she was bringing such a claim, despite the complaint listing Title VII discrimination as Count I. *Docs. 1, 39, 40.*  We dismissed Count II, the hostile-work-environment claim, because Trevizo did not allege facts supporting a reasonable inference that she was subject to severe or pervasive discrimination, with the memorandum opinion noting examples of specific deficiencies in the complaint. *Doc. 39, 40.*  Our dismissal was, however, without prejudice and we granted leave to amend. *Doc. 40.*

As a result, Trevizo filed an amended complaint against the defendant, now alleging a single Title VII hostile-work-environment claim. *Doc. 41.*  The defendant filed the presently pending motion to dismiss and/or for summary

judgment (*doc. 43*) and a brief in support (*doc. 49*).  After Trevizo filed a brief in opposition (*doc. 69*), the defendant filed a reply brief (*doc. 76*).  Trevizo alleges the following facts in her amended complaint.

Beginning in May 2016, Trevizo, who "is a Hispanic female with brown skin, of Puerto Rican decent [*sic*]," was employed at the Naval Supply Systems Command, Ammunition Logistics Center in Mechanicsburg, Pennsylvania, as a Supervisory Logistics Management Specialist. *Doc. 41* ¶¶ 3, 9-10.  Catherine Butler was Trevizo's first-level supervisor. *Id.* ¶ 11.  Beginning in 2019, Captain Arcangelo Dell'Anno became Trevizo's second-level supervisor and Butler's first-level supervisor. *Id.* ¶ 12.

Trevizo alleges that she was subject to a "hostile and abusive work environment" that "was created by pervasive and continuous discriminatory actions" by Butler, who "continuously and increasingly treated" her "significantly less favorably than her white, male counterparts[.]" *Id.* ¶ 13.  "By way of illustration and without limitation," Trevizo lists the following as "some examples of this behavior" by Butler:

- In 2017, Ms. Butler refused to permit Ms. Trevizo to move her ergonomically fitted office furniture with her when she was moved to another office, which was provided to her as an accommodation after an ergonomic study was performed for Ms. Trevizo, forcing Ms.

Trevizo to work at a desk that was not accommodating to her physical needs, as was established as necessary through the study;

- In 2017, Ms. Butler denied Ms. Trevizo's request to telework due to a school closure for a snowstorm, advising that telework was not authorized to watch children, despite Ms. Butler doing just that, only a few months prior to this denial;

- In 2018, [w]hile Ms. Trevizo was on maternity leave, Ms. Butler stated to Jeremy Hilliker, a white male and subordinate to Ms. Trevizo, that[] "it is so much nicer having you attend the meetings, you are so much more agreeable," while Mr. Hilliker was the acting division head in place of Ms. Trevizo, which was degrading toward Ms. Trevizo and inhibit[ed] the trust and loyalty that Ms. Trevizo had worked diligently to instill with the members of her team;

- In 2019, when Ms. Trevizo's husband applied for a Logistics Management Specialist position in the department managed by Keith Rhodes, a lateral department to Ms. Trevizo's department, Ms. Butler advised Mr. Rhodes to refrain from interviewing Ms. Trevizo's husband for the position, despite other married couples working in similar departments and those relationships not being an issue;

- In 2019, Ms. Trevizo's request to hire a transferring employee from WSS as a developmental hire, something that [] had been done many times in the past because of the specialized work, was met with significant pushback from Ms. Butler and additional hurdles to overcome, as compared to these types of hire requests being readily approved for Ms. Trevizo's white, male predecessor, as well as a subsequent request by Mr. Rhodes, that same year, without any pushback or additional steps inserted into the process;

- In 2020, Ms. Trevizo received a standup desk that she was approved for in 2019, however, the motor did not work, and despite notice to Ms. Butler, Ms. Butler refused and/or failed to have the motor repaired, thus eliminating any benefit that could have been appreciated by Ms. Trevizo;

- The work product produced by Ms. Trevizo's division was scrutinized more harshly while under the management of Ms. Trevizo, compared to when it was managed by her white, male predecessor, Craig Murphy, or while under the temporary management of Mr. Hilliker, including but not limited to, the revisions of the NAVSUP P-724, the Non-Combat Expenditure Allowance Naval Message, [and] the Annual Price Update.

5

- The increased scrutiny[] was not supported by the Naval Style Guide, and differed from one submission to the next, such that when a format was adjusted, by the next submission, the adjusted format was questioned;

- The increased scrutiny and hostile environment created by Ms. Butler and aimed an [*sic*] Ms. Trevizo became so pervasive that one of Ms. Trevizo's staff members, Mark Emory, sought another position to get away from the hostility;

- Ms. Butler denied approval of developmental training for Ms. Trevizo on multiple occasions that would have assisted her in her promotional prospects within her career, even inserting herself to deny some training opportunities that did not require supervisor approval and trying to accuse her of not following approval procedures, when Ms. Butler had previously approved the training in question;

- Ms. Butler seemed to consistently misinterpret e-mails from Ms. Trevizo to Ms. Copp, as though they were aggressive or overstepping her authority, despite Ms. Treviso [*sic*]  just trying to relay the formatting concerns that she was trying to navigate with Ms. Butler to avoid being further criticized for allegedly inferior work product;

- Ms. Butler used one instance of a misinterpreted September 23, 2020 e-mail between Ms. Treviso [*sic*] and Ms. Cobb to justify adverse actions toward Ms. Trevizo on four separate occasions, without any opportunity to modify the alleged behavior by: blindsiding her with an investigatory meeting on September 24, 2020, without providing her an opportunity for representation; giving her an unsatisfactory rating in her mid-year review; denying a request for developmental training on October 8, 2020; suggesting a three-day suspension on October 27, 2020; and giving her an unacceptable rating in her FY20 review on February 18, 2021, despite receiving notices prior to this of improvement from the alleged concern;

- Ms. Butler would criticize Ms. Treviso [*sic*] by emails that copied her colleagues and employees that she supervised, such that they were degrading and diminished the trust and loyalty that she had worked diligently to instill with the members of her team.

*Id.*

Trevizo alleges Captain Dell'Anno failed or refused to correct Butler's actions, and instead "became a participant in the actions" that caused the hostile work environment. *Id.* ¶ 14. Trevizo lists a number of actions by Captain Dell'Anno, "including, but not limited to:"

- Captain Dell'Anno failed and/or refused to correct Ms. Butler's use of one misinterpreted e-mail as the basis for three separate adverse actions toward Ms. Trevizo;

- Captain Dell'Anno failed and/or refused to correct Ms. Butler's improper denials of developmental training opportunities for Ms. Trevizo;

- It is believed and therefor [sic] averred that Captain Dell'Anno improperly altered the course of hiring for a position that Ms. Trevizo was qualified for and had applied for, in order make it more difficult for Ms. Trevizo to be selected for the position; and

- It is believed and therefore averred that Captain Dell'Anno improperly delayed upgrading the classification status of Ms. Treviso's [*sic*] position until after she left the position, despite requesting Ms. Treviso [*sic*] to provide revised job descriptions for her department for this purpose, and then improperly upgraded the white male replacement to a higher grade in violation of the time in grade requirements.

*Id.* Trevizo asserts her belief that "gender, ethnicity, and/or color, were motivating factors in the circumstances, actions and omissions that created the hostile and abusive work environment[.]" *Id.* ¶ 16.

8

Trevizo requested Equal Employment Opportunity ("EEO") counseling regarding the discrimination and harassment by Butler, and after an EEO counselor issued a Notice of Right to File a Formal Complaint of Discrimination, in January 2021, she filed her formal complaint with the EEO. *Id.* ¶¶ 17-18.  A private contractor investigated Trevizo's claims, and an EEOC administrative judge subsequently issued a decision and order granting summary judgment. *Id.* ¶¶ 19-20.[1]  The Department of the Navy issued a final order on December 22, 2022. *Id.* ¶ 21.

Trevizo's amended complaint contains a single count labeled "Harassment in Violation of Title VII of the Civil Rights Act of 1964." *Id.* at 11.  Trevizo alleges that the defendant "continuously harassed [her] because of her gender, ethnicity and/or color, by engaging in a course of conduct, including but not limited to, the acts and omissions set forth above, thus creating a hostile and abusive work environment." *Id.* ¶ 28.  She alleges that the harassing conduct was "unwelcomed," that she perceived the working environment to "actually be abusive and hostile," and "a reasonable person in [her] circumstances would have considered the working environment suffered by [her] to be abusive and/or hostile." *Id.* ¶¶ 29, 30.  The defendant "knew or should have known of the

---

[1] As in the original complaint, Trevizo does not explicitly allege, though it is implied by the fact she filed this action, that summary judgment was against her and in favor of the defendant.

harassment but failed to take prompt remedial action to address the

circumstances." *Id.* ¶ 31. Further, Trevizo's "gender, ethnicity and/or color, were

motivating factors" in the defendant's "decision to treat [her] in a harassing

manner." *Id.* ¶ 32. Trevizo alleges that she suffered damages as a result of the

defendant's "harassing actions and inactions, as well as the Defendant's failure to

take prompt remedial action to prevent the harassment[.]" *Id.* ¶ 33.

Trevizo seeks compensatory damages, "[i]njunctive relief, equitable relief,

affirmative relief, accrual of back pay," attorney's fees, costs, and interest. *Id.* at 13

(Wherefore Clause).


## III.  Pleading and Motion-to-Dismiss Standards.

In accordance with Fed. R. Civ. P. 12(b)(6), the court may dismiss a

complaint for "failure to state a claim upon which relief can be granted." When

reviewing a motion to dismiss under Rule 12(b)(6), "[w]e must accept all factual

allegations in the complaint as true, construe the complaint in the light favorable to

the plaintiff, and ultimately determine whether [the] plaintiff may be entitled to

relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605

F.3d 223, 229 (3d Cir. 2010). In making that determination, we "consider [ ] the

complaint, exhibits attached to the complaint, matters of public record, as well as

undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769–70 (M.D. Pa. 2012). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). The statement required by Rule 8(a)(2) must give the defendant fair notice of the nature of the plaintiff's claim and of the grounds upon which the claim rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than "labels," "conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court "'must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party.'" *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v.*

*Cty. Of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)).  But a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  A court also need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal*, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (footnote and citations omitted) (quoting *Iqbal,* 556 U.S. at 675, 679).

IV.  **Discussion.**

"In 1972, Congress extended Title VII's protection to federal employees." *Francis v. Mineta*, 505 F.3d 266, 271 (3d Cir. 2007).  The federal-sector provision of Title VII provides that "[a]ll personnel actions affecting employees or applicants for employment" in specified federal departments and agencies "shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a).  "Workplace behavior may violate Title VII in a variety of ways." *Kengerski v. Harper*, 6 F.4th 531, 537 (3d Cir. 2021).  Here, Trevizo alleges a hostile-work-environment claim. *Doc. 41* at 11; *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998) (observing that it has held that "harassment so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment violates Title VII") (internal quotation marks and citation omitted)).

In order to prevail on a hostile-work-environment claim, a plaintiff must establish (1) that she suffered intentional discrimination because of a protected characteristic, (2) that the discrimination was severe or pervasive; (3) that the discrimination detrimentally affected her; (4) that the discrimination would have detrimentally affected a reasonable person of like characteristics in like circumstances; and (5) the existence of respondeat superior liability. *Huston v. Proctor & Gamble Paper Products Corp.*, 568 F.3d 100, 104 (3d Cir. 2009).  "The

first four elements establish a hostile work environment, and the fifth element determines employer liability." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).  Of course, at the motion-to-dismiss stage, a plaintiff need not prove her case.  Rather, the pleading "standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)). "Therefore, at this early stage of the proceedings, it is enough for [Trevizo] to allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Id.*

The defendant argues that the amended complaint suffers from the same deficiencies as the original complaint, that is, Trevizo fails to allege facts supporting a reasonable inference that she was subject to severe or pervasive discrimination.  Because the amended complaint does not materially alter the allegations from the original complaint, we agree and will dismiss.

For workplace harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986).  "The 'severe or pervasive' standard is disjunctive and so 'a plaintiff need not show that her hostile working environment was both severe and

14

pervasive; only that it was sufficiently severe or sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions.'" *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 215 n.12 (3d Cir. 2017) (quoting *Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 119 (2d Cir. 2010)). Thus, "'some harassment may be severe enough to contaminate an environment event if not pervasive; other, less objectionable, conduct will contaminate the workplace only if it is pervasive.'" *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017) (quoting *Jensen v. Potter*, 435 F.3d 444, 449 n.3 (3d Cir. 2006)).  But "'isolated incidents (unless extremely serious) will not amount to [harassment]." *Id.* (quoting *Jensen*, 435 F.3d at 449 n.3).

"When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank*, 477 U.S. at 65 & 67).  The "conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788.  "Although the bar for establishing severe or pervasive discrimination is relatively high, the determination of what constitutes severe or pervasive does not lend itself to a mathematically precise test." *Fedder v. Bloomsburg Univ. of Pennsylvania*, No. 4:23-CV-01678, 2024 WL 580552, at *3 (M.D. Pa. Feb. 13,

2024) (internal quotation marks and citation omitted).  Whether an environment is

hostile or abusive can be determined only by looking at all the circumstances.

*Harris*, 510 U.S. at 23.  The circumstances "may include the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes

with an employee's work performance." *Id.*  "'[S]imple teasing,' offhand

comments, and isolated incidents (unless extremely serious) will not amount to

discriminatory changes in the 'terms and conditions of employment.'" *Faragher*,

524 U.S. at 788 (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S.

75, 82 (1998)).

At the outset, we note that in dismissing Trevizo's original complaint, we

provided specific deficiencies that stood as obstacles to proceeding with her

hostile-work-environment claim, including that the alleged conduct by Butler

appeared to be "vague and episodic" and Trevizo did not address how each

incident affected her work environment. *Doc. 39* at 18-19.  The allegations in the

amended complaint either do not address the deficiencies at all or present only

superficial amendments such that they still do not support a reasonable inference

that Trevizo was subject to severe or pervasive discrimination.

For example, Trevizo alleges that her husband applied for a position in a

lateral division with the Department of the Navy, but Butler advised the division

manager Keith Rhodes "to refrain from interviewing" Trevizo's husband. *Doc. 41* ¶ 13. As in the original complaint, the amended complaint fails to allege whether Rhodes actually refrained from interviewing Trevizo's husband or whether he was hired for the position, and how this affected her work environment on account of her gender, ethnicity, or color.

Trevizo again alleges that she attempted to make a "developmental hire." *Doc. 41* ¶ 13. But she received significant pushback and had to jump through additional hurdles. *Id.* She again does not specify what the pushback was, what the hurdles were, or whether the developmental hire was ultimately made.

Trevizo alleges that Butler scrutinized the work product produced by Trevizo's division more harshly than when it was under the management of a white male. *Doc. 41* ¶ 13. She does not, however, allege how frequently this occurred, instead giving one example of a project that was allegedly scrutinized more harshly based on formatting.

She alleges that Captain Dell'Anno altered the course of hiring to make it more difficult for Trevizo to be selected for a position and delayed the upgrading of a position until after Trevizo left and was replaced by a white male. *Doc. 41* ¶ 14. Neither allegation includes a general time period that this occurred, or how it is connected to the allegations against Butler.

Our memorandum opinion stated that the complaint did not "allege when any of th[e] alleged actions or inactions by Butler took place or how they were connected." *Doc. 39* at 17. Trevizo's amended complaint does attempt to remedy this somewhat, by providing years or dates to the allegations, but this does not salvage it. Trevizo also alleges that Butler "used one instance of a misinterpreted . . . email" from September 23, 2020, to justify adverse actions against her, including subjecting Trevizo to an investigatory meeting on September 24, 2020, giving her an unsatisfactory mid-year review, denying her request for developmental training on October 8, 2020, suggesting a three-day suspension on October 27, 2020, and giving her an unacceptable rating for her FY20 review on February 18, 2021. *Doc. 41* ¶ 13. Although this allegation is more specific than the corresponding allegation in the original complaint, it is not sufficient to show pervasive discrimination on account of Trevizo's gender, ethnicity, or color.

Nothing in the amended complaint ties these allegations together, and the allegations span years. Trevizo alleges two instances of discrimination in 2017, one in 2018, two in 2019, and one in 2020, criticism of an email with specific dates and alleged bad reviews or punishment, and one example of discrimination regarding increased scrutiny about work product. "[P]ervasive means not just episodic, but sufficiently continuous and concerted." *Sousa v. Amazon.Com, Inc.*, No. 1:21-CV-717-SB, 2022 WL 4548910, at *2 (D. Del. Sept. 29, 2022) (internal

quotation marks and citation omitted), *aff'd*, No. 22-3043, 2023 WL 7486751 (3d Cir. Nov. 13, 2023).

Given the vague and episodic nature of the alleged conduct, despite an opportunity to remedy the deficiencies by amendment, we conclude that Trevizo has failed to plausibly allege that she was subject to severe or pervasive discrimination because of her gender, ethnicity, or color.  In doing so, we consider the totality of the circumstances and the entire scenario regarding Trevizo's work environment. *Harris*, 510 U.S. at 23 ("[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances."); *Cardenas v. Massey*, 269 F.3d 251, 261-62 (3d Cir. 2001) ("[T]he advent of more sophisticated and subtle forms of discrimination requires that we analyze the aggregate effect of all evidence and reasonable inferences therefrom, including those concerning incidents of facially neutral mistreatment, in evaluating a hostile work environment claim."); *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1484 (3d Cir. 1990) ("A play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario.").  We are also mindful that "[c]ourts in this Circuit have . . . 'shown a reluctance to dismiss a complaint at the 12(b)(6) stage when the primary challenge to the hostile work

environment claim is whether or not the conduct in question is severe [or] pervasive.'" *Fedder*, 2024 WL 580552, at *3 (citing cases).

Even so, hostile-work-environment claims are subject to dismissal at the 12(b)(6) stage when the complaint fails to plausibly allege facts from which it can be inferred that the plaintiff was subject to severe or pervasive harassment. *See e.g., Sousa v. Amazon.com, Inc.*, No. 22-3043, 2023 WL 7486751, at *3 (3d Cir. Nov. 13, 2023) ("Sousa's hostile work environment claim fails because she has not sufficiently alleged that Dorsey's conduct was so severe or pervasive that it altered her conditions of employment."); *Rajendran v. Wormuth*, No. 3:22-CV-00581, 2023 WL 2666695, at *7–8 (M.D. Pa. Mar. 28, 2023) (dismissing hostile-work environment claim because the plaintiff "fails to describe harassment that is severe or pervasive," and observing that "[i]nstead, he alleges isolated incidents of denied training, a single incident of discipline that was not proportional to the infraction, and a demotion," and "[h]e does not aver that these actions changed the conditions of his day-to-day employment," "[h]e does not describe an abusive working environment," and "[t]he conduct he describes is not extreme"); *Evan v. DeJoy*, No. 3:20-CV-49, 2023 WL 2577235, at *6 (M.D. Pa. Mar. 20, 2023) (concluding that the complaint fails to state a hostile-work environment claim because, among other reasons, the plaintiff "has not plausibly alleged that the harassment was severe or pervasive enough to create an objectively hostile or abusive work

environment—an environment that a reasonable person would find hostile or abusive" (internal quotation marks and citations[omitted)); *Henderson v. Pennsylvania State Univ.*, No. 4:21-CV-00872, 2022 WL 838119, at *10 (M.D. Pa. Mar. 21, 2022) (concluding that "even under the lenient standards applied to a motion to dismiss, the allegations, as currently constituted, are insufficient to demonstrate sufficiently pervasive or severe discrimination," describing the allegations as conclusory, and noting that the plaintiff "must put some meat on the bones of his allegations in order to support his claim that racism and racial biases permeate Penn State" (internal quotation marks and citation omitted)); *Andrews v. Williams WPC-I, LLC*, No. 4:19-CV-02200, 2020 WL 4015404, at *6 (M.D. Pa. July 16, 2020) (dismissing hostile-work-environment claim because the plaintiff "has not alleged enough to satisfy the high standard of establishing a hostile work environment," explaining that the plaintiff "has not made out that the performance review, exclusion from emails and meetings, and bad faith responses were because of [the plaintiff's] age," that "the alleged conduct was 'physically threatening or humiliating' or that it 'unreasonably interfere[d] with [his] work performance,' and noting that the "Court cannot divine the precise frequency or severity of this conduct from the current minimal state of the pleadings" (internal citations omitted)).  And "[t]o state a hostile work environment claim, the complaint need[s] to describe conduct that reveal[s] the plaintiff's work environment was so

21

'permeated with discriminatory intimidation, ridicule, and insult' that it 'alter[ed] the conditions of [her] employment.'" *Sousa*, 2023 WL 7486751, at *3 (quoting *Harris*, 510 U.S. at 21).  Here, Trevizo alleges disparate instances of conduct, separated by years, by two different supervisors in support of her hostile-work-environment claim.  Viewing the facts alleged as a whole and in the light most favorable to Trevizo, we conclude that, for the reasons set forth above, Trevizo has failed to allege facts that plausibly suggest that she was subject to severe or pervasive discrimination because of her gender, ethnicity, or color that altered the conditions of her employment.  Accordingly, she fails to state a hostile-work-environment claim upon which relief can be granted.[2]

## V. Amendment.

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).  "Under Rule 15(a), futility of amendment is a sufficient basis to deny leave to amend." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010).  "Futility 'means that the complaint, as amended, would fail to state a claim

---

[2] Because we conclude that the amended complaint fails to state a claim upon which relief can be granted, we do not address the defendant's other arguments.

upon which relief could be granted.'" *Id.* (quoting *in re Merck & Co. Sec., Derivative, & ERISA Litig.*, 493 F.3d 393, 400 (3d Cir. 2007)).  Thus, in determining whether an amendment would be futile, we apply the same standard as we apply in determining whether a complaint fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). *Id.*  "In other words, '[t]he District Court determines futility by taking all pleaded allegations as true and viewing them in a light most favorable to the plaintiff.'" *Id.* (quoting *Winer Family Trust v. Queen*, 503 F.3d 319, 330–31 (3d Cir. 2007)).

Trevizo was previously given leave to amend her complaint. *Docs. 40.* Trevizo has again, however, failed to state a claim upon which relief can be granted.  We thus conclude that further leave to amend would be futile.


## VI.  Conclusion.

Based on the foregoing, we will grant the defendant's motion to dismiss (*doc. 43*).  An appropriate order follows.


*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge

23